**KAZEROUNI LAW GROUP, APC**
Abbas Kazerounian, Esq. (249203)
ak@kazlg.com
Pamela E. Prescott, Esq. (328243)
pamela@kazlg.com
245 Fischer Avenue, Unit D1
Costa Mesa, CA 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

**MADAR LAW CORPORATION**
Alex S. Madar, Esq. (319745)
alex@madarlaw.net
11510 Eaglesview Ct.,
San Diego, CA 92127
Telephone: (858) 299-5879
Facsimile: (619) 354-7281

[Additional Counsel On Signature Page]

Attorneys for Plaintiff,
Michael Yoffee

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **MICHAEL YOFFEE, Individually and On Behalf of All Others Similarly Situated,**<br><br>**Plaintiff,**<br><br>v.<br><br>**JOSHUA DAVID MELLBERG, LLC d/b/a J.D. MELLBERG FINANCIAL,**<br><br>**Defendant.** | Case No.: **'20CV2304 CAB DEB**<br><br>**CLASS ACTION**<br><br>**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELEIF PURSUANT TO THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227, *ET SEQ*.**<br><br>**JURY TRIAL DEMANDED** |

## INTRODUCTION

1. Plaintiff MICHAEL YOFFEE ("Mr. Yoffee" or "Plaintiff"), individually and on behalf of all others similarly situated, brings this action for damages and injunctive relief, and any other available legal or equitable remedies, resulting from the illegal actions of defendant JOSHUA DAVID MELLBERG, LLC d/b/a J.D. MELLBERG FINANCIAL ("Mellberg Financial" or "Defendant") in negligently, knowingly and/or willfully transmitting unsolicited, autodialed calls and voicemails to cellular telephones of consumers, in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq*., ("TCPA"), thereby invading the privacy of Plaintiff and the putative class members.

2. Plaintiff makes these allegations on information and belief, with the exception of those allegations that pertain to Plaintiff, or to Plaintiff's counsel, which Plaintiff alleges on personal knowledge.

3. Upon information and belief, Defendant placed the automated calls and voice messages to Plaintiff and others similarly situated without their prior express written consent in order to solicit their business. This is exactly the type of telephonic contact the TCPA was designed to prevent.

4. Unless otherwise indicated, the use of Defendant's name in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of the named Defendant.

## NATURE OF THE ACTION

5. In 1991, Congress passed the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq*., ("TCPA"), in response to complaints about abusive telemarketing practices.

6. In enacting the TCPA, Congress intended to give consumers a choice as to how creditors and telemarketers may call them, and made specific findings that "[t]echnologies that might allow consumers to avoid receiving such calls are not

universally available, are costly, are unlikely to be enforced, or place an inordinate burden on the consumer. TCPA, Pub.L. No. 102–243, § 11.  Toward this end, Congress found that:

> [b]anning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion.

*Id*. at § 12.

7. The Federal Trade Commission ("FCC") is charged with the authority to issue regulations implementing the TCPA. According to findings by the FCC, automated calls and text messages are prohibited under the TCPA because receiving them is a greater invasion of privacy and nuisance compared to live solicitation calls. The FCC has also acknowledged that wireless customers are charged for any incoming calls and text messages.

8. In 2015, the FCC noted, "[m]onth after month, unwanted robocalls and texts, both telemarketing and informational, top the list of consumer complaints received by the Commission." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶ 1 (2015).

9. The transmission of an unsolicited calls and voice messages to a cellular device is distracting and aggravating to the recipient and intrudes upon the recipient's seclusion.

### JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this case arises out of violation of federal law. 47 U.S.C § 227(b).

11. Because Defendant directs and conducts business within the State of California and this judicial district, personal jurisdiction is established.

12. Personal jurisdiction and venue are proper in the Southern District of California pursuant to 28 U.S.C. § 1391 for the following reasons: (1) Plaintiff resides within this judicial district; (2) the conduct complained of herein occurred within this judicial district; and (3) Defendant conducted business within this judicial district at all times relevant. Specifically, Defendant invaded Plaintiff's privacy by contacting Plaintiff on his cellular telephone, which occurred while Plaintiff was located in the County of San Diego, State of California, which is within this judicial district.

**PARTIES**

13. Plaintiff is an individual residing in the San Diego County, City of San Diego, State of California, and is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

14. Upon information and belief, Plaintiff alleges that Mellberg Financial is a limited liability company whose state of incorporation is Delaware and principal place of business at 3067 W Ina Road, Suite 105, Tucson, Arizona 85741.

15. Upon information and belief, Mellberg Financial is a privately-owned company founded in or around 2005 that specializes in retirement financial services and annuity income planning.

16. Mellberg Financial's business growth is driven by its "lead-generation and call center appointment-setting capabilities," which is combined with a "proprietary technology platform [that] provides detailed analytics and matches up agents and prospects via a unique mobile sales technology tool."[1]

17. Defendant is, and at all times mentioned herein was, a "person" as

---

[1] J.D. Mellberg Financial, *AmeriLife® Expands Retirement Planning Services with Acquisition of J.D. Mellberg Financial*, https://www.jdmellberg.com/articles/ (last visited Nov. 19, 2020).

defined by 47 U.S.C. § 153(39).

18. Plaintiff alleges that at all times relevant herein, Defendant conducted business in the State of California, in the County of San Diego, and within this judicial district.

## FACTUAL ALLEGATIONS

19. Plaintiff is, and at all times mentioned herein was, the subscriber of the cellular telephone number ending 9701 (the "9701 Number"). The 9701 Number is, and at all times mentioned herein was, assigned to a cellular telephone service as specified in 47 U.S.C. § 227(b)(1)(A)(iii).

20. At no time did Plaintiff ever enter into a business relationship with Defendant, nor did Plaintiff ever provide that cellular telephone number to Defendant through any medium.

21. On or about September 25, 2020, at approximately 7:58 a.m., Defendant placed an automated call to Plaintiff on his cellular phone ending in "9701" from the number (520) 353-3072.

22. Upon information and belief, Defendant used a pre-recorded voice to leave a voicemail on Plaintiff's cell phone. The voicemail was from Scott Herkert of J.D. Mellberg, and advertised Defendant's services of providing leads to financial advisors using Defendant's mobile sales technology platform.

23. Plaintiff was confused as to why he had received a solicitation call and voicemail from Defendant because Plaintiff had no prior business relationship or contact with Defendant. Further, Plaintiff never provided Defendant with his cellular telephone number. Frustrated and confused by this unwanted automated call and voicemail, Plaintiff did not return Defendant's call.

24. On or about October 5, 2020, at approximately 9:00 a.m., Defendant placed a second automated call to Plaintiff on his cellular phone ending in "9701," but this time that call was from a blocked number. Plaintiff did not answer the call, but received a voicemail identical to the September 25, 2020 voicemail, which used

the same pre-recorded voice of Scott Herkert from J.D. Mellberg.

25. On or about October 14, 2020, at approximately 8:19 a.m., Defendant placed a third automated call to Plaintiff on his cellular phone ending in "9701," this time from the number (702) 723-4424. Following the call, Plaintiff received a voicemail advertising Defendant's services and instructing Plaintiff to contact J.D. Mellberg for "annuity prospects" related to its lead database, and noting that Defendant is a "trusted and recognizable brand."

26. Unlike the first two voicemails, no name was provided on the third voicemail, but Plaintiff was told to call (520) 353-3082 to inquire about Defendant's services. Plaintiff did not return Defendant's call.

27. On or about October 21, 2020, at approximately 8:24 a.m., Defendant placed a fourth automated call to Plaintiff on his cellular phone ending in "9701" from the same (702) 723-4424 number. Plaintiff received an identical voicemail to the previous October 14, 2020 call, which instructed Plaintiff to call (520) 353-3082 to inquire about Defendant's services. Plaintiff again did not return Defendant's call.

28. Upon information and belief, the above four calls were placed via an "automatic telephone dialing system," ("ATDS") as defined by 47 U.S.C. § 227 (a)(1), using an "artificial or prerecorded voice" as prohibited by 47 U.S.C § 227(b)(1)(A), to contact Plaintiff regarding the advertisement of Defendant's services.

29. Mellberg Financial or its agent called Plaintiff's cellular telephone each time in an effort to persuade Plaintiff to use Defendant's financial services. The first two identical voicemails that Defendant left Plaintiff, on September 25, 2020 and October 5, 2020, contain a brief delay before the speaker's voice is heard.

30. The calls at issue, sent by Defendant to the 9701 Number in September and October of 2020, constitute "advertisement" and/ or "telemarketing" call as prohibited by the TCPA, as Defendant placed the calls to Plaintiff in order to advertise its financial advisor lead services as well as its "annuity prospects" related

to its lead database.

31. Upon information and belief, Defendant controlled the content of the calls, timing of the calls and voicemails, and which phone numbers to call, in an effort to increase the use of Defendant's business.

32. Despite Plaintiff's numerous attempts to ignore and avoid Mellberg Financials' calls, Defendant has called Plaintiff several times on his cellular telephone without his prior express written consent.

33. Upon information and belief this telephone dialing equipment used by Mellberg Financial, or its agent, has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator.

34. Upon information and belief, this telephone dialing equipment also has the capacity to dial telephone numbers stored in a database or as a list, without human intervention.

35. The months of unwanted calls from Mellberg Financial caused Plaintiff to become annoyed and frustrated.

36. Through Defendant's aforementioned conduct, Plaintiff suffered an invasion of a legally protected interest in privacy, which is specifically addressed and protected by the TCPA.

37. Defendant's calls forced Plaintiff and other similarly situated class members to live without the utility of their cellular phones by occupying their telephone with one or more unwanted calls, causing nuisance and lost time.

38. The telephone number Mellberg Financial or its agent called was assigned to a cellular telephone service for which Plaintiff incurs a charge for a cellular telephone service pursuant to 47 U.S.C. § 227(b)(1).

39. The calls to Plaintiff were not for emergency purposes as defined by 47 U.S.C. § 227(b)(1)(A)(i).

40. Defendant's calls to Plaintiff cellular telephone number were unsolicited by Plaintiff and were placed without Plaintiff's prior express written

consent or permission.  Therefore, Defendant did not have "prior express consent" to call Plaintiff by means of an ATDS as prohibited by 47 U.S.C § 227(b)(1)(A).

## CLASS ACTION ALLEGATIONS

41. Plaintiff brings this action on behalf of Plaintiff and all others similarly situated (the "Class").

42. Plaintiff represents, and is a member of, the Class, pursuant to Fed. R. Civ. P. 23(b)(3) and/or (b)(2), which is defined as follows:

> All persons within the United States who received an automated call to their cellular telephone from Defendant, its employees or its agents, within the four years prior to the filing of the Complaint.

43. Plaintiff represents, and is a member of, the Sub-Class, pursuant to Fed. R. Civ. P. 23(b)(3) and/or (b)(2), which is defined as follows:

> All persons within the United States who received an automated call to their cellular telephone from Defendant, its employees or its agents, with an artificial or prerecorded voice message, within the four years prior to the filing of the Complaint.

44. The Class and Sub-Class are together referred to as the "Classes."

45. Excluded from the Classes are: (1) Defendant, any entity or division in which Defendant has a controlling interest, and their legal representatives, officers, directors, assigns, and successors; (2) the Judge to whom this case is assigned and the Judge's staff; and (3) those persons who have suffered personal injuries as a result of the facts alleged herein.

46. Plaintiff reserves the right to redefine the Classes, and to add and redefine any additional subclass as appropriate based on discovery and specific theories of liability.

47. The Classes that Plaintiff seeks to represent contains numerous

members and is ascertainable including, without limitation, by using Defendant's records to determine the size of the Class and to determine the identities of individual Class members.

**Numerosity**

48.   The members of the Classes are so numerous that joinder of all members would be unfeasible and impractical. The membership of the Classes is currently unknown to Plaintiff at this time. However, given that, on information and belief, Defendant sent or transmitted, or had sent or transmitted on its behalf, unsolicited calls and voicemails to hundreds, if not thousands, of customers' cellular telephones nationwide using an ATDS, and transmitting an artificial or prerecorded voice message, during the proposed class period, it is reasonable to presume that the members of the Classes are so numerous that joinder of all members is impracticable. The disposition of their claims in a class action will provide substantial benefits to the parties and the Court.

**Commonality**

49.   There are questions of law and fact common to the Class and Sub-Class that predominate over any questions affecting only individual Class members. Those common questions of law and fact include, without limitation, the following:

a) Whether within the four years prior to the filing of this Complaint, Defendant or employees or agents transmitted any marketing calls, including any artificial or prerecorded voice messages, without the prior express written consent of Plaintiff and Class members using an "automatic telephone dialing system";

b) Whether Defendant can meet its burden to show Defendant obtained prior express written consent (as defined by 47 C.F.R. 64.1200(f)(8)) to send marketing calls and voicemails complained of, assuming such an affirmative defense is raised;

c) Whether Defendant has a business relationship with Plaintiff and the

members of the Classes;

d) Whether Defendant's conduct was knowing and/or willful;

e) Whether Plaintiff and the members of the Class were damaged thereby, and the extent of damages for such violation; and,

f) Whether Defendant or affiliates, subsidiaries, or agents of Defendant should be enjoined from engaging in such conduct in the future.

**Typicality**

50.  Plaintiff is qualified to, and will, fairly and adequately protect the interests of each Class member with whom they are similarly situated, and Plaintiff's claims (or defenses, if any) are typical of all members of the Class and Sub-Class, as demonstrated herein.

51.  Plaintiff represents and is a member of the Classes because Plaintiff received at least one call and prerecorded voice message through the use of an automatic telephone dialing system, without providing prior express written consent to the Defendant within the meaning of the TCPA, without a prior business relationship with Defendant. Consequently, the claims of Plaintiff are typical of the claims of Class members and Plaintiff's interests are consistent with and not antagonistic to those of the other members of the Classes that Plaintiff seeks to represent.

52.  Plaintiff and all members of the Classes have been impacted by, and face continuing harm arising out of, Defendant's violations or misconduct as alleged herein.

**Adequacy**

53.  Plaintiff is qualified to, and will, fairly and adequately protect the interests of each member of the Class and Sub-Class with whom Plaintiff is similarly situated, as demonstrated herein. Plaintiff acknowledges that Plaintiff has an obligation to make known to the Court any relationship, conflicts, or differences with any members of the Classes. Plaintiff's attorneys, the proposed class counsel,

are versed in the rules governing class action discovery, certification, and settlement. In addition, the proposed class counsel is experienced in handling claims involving consumer actions and violations of Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq*. Plaintiff has incurred, and throughout the duration of this action, will continue to incur costs and attorneys' fees that have been, are, and will be, necessarily expended for the prosecution of this action for the substantial benefit of each member of the Classes. Neither Plaintiff nor Plaintiff's counsel have any interests adverse to those of the other members of the Classes.

### **Predominance**

54. Questions of law or fact common to the members of the Classes predominate over any questions affecting only individual members of the class. The elements of the legal claims brought by Plaintiff and members of the Classes are capable of proof at trial through evidence that is common to the class rather than individual to its members.

### **Superiority**

55. A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all members of the Class and Sub-Class is impracticable and questions of law and fact common to the Classes predominate over any questions affecting only individual members of the Classes. Even if every individual member of the Class and Sub-Class could afford individual litigation, the court system could not. It would be unduly burdensome to the courts if individual litigation of the numerous cases were to be required.

56. Individualized litigation also would present the potential for varying, inconsistent, or contradictory judgments, and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues. By contrast, conducting this action as a class action will present fewer management difficulties, conserve the resources of the parties and the court system,

and protect the rights of each member of the Classes. Further, it will prevent the very real harm that would be suffered by numerous members of the Classes who will be unable to enforce individual claims of this size on their own, and by Defendant's competitors, who will be placed at a competitive disadvantage because they chose to obey the law. Plaintiff anticipates no difficulty in the management of this case as a class action.

57. The prosecution of separate actions by individual members of the Classes may create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other members not parties to those adjudications, or that would otherwise substantially impair or impede the ability of those non-party members of the Classes to protect their interests.

58. The prosecution of individual actions by members of the Classes would establish inconsistent standards of conduct for Defendant.

59. Defendant has acted or refused to act in ways generally applicable to the Classes, thereby making appropriate final and injunctive relief or corresponding declaratory relief with regard to members of the Class and Sub-Class as a whole. Likewise, Defendant's conduct as described above is unlawful, is capable of repetition, and will continue unless restrained and enjoined by the Court.

60. The Classes may also be certified because:

(a) the prosecution of separate actions by individual members would create a risk of inconsistent or varying adjudication with respect to individual members, which would establish incompatible standards of conduct for Defendants;

(b) the prosecution of separate actions by individual members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other members of the Classes not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and,

(c) Defendants have acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate final and injunctive relief with respect to the members of the Class and Sub-Class as a whole.

61. This suit seeks only damages and injunctive relief for recovery of statutory damages on behalf of Classes and it expressly is not intended to request any recovery for personal injury and claims related thereto.

**FIRST CAUSE OF ACTION**
**NEGLIGENT VIOLATIONS OF THE TCPA**
**47 U.S.C. § 227 *ET SEQ.***

62. Plaintiff repeats and incorporates by reference the allegations set forth above as though fully stated herein.

63. The forgoing acts and omissions of Defendant constitute numerous and multiple negligent violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. § 227, *et seq*. Defendant's repeated automated calls and prerecorded voice messages to Plaintiff's cellular phone, without any prior express written consent.

64. As a result of Defendant's negligent violations of 47 U.S.C. § 227, Plaintiff and all members of the Classes are entitled to, and do seek, injunctive relief prohibiting such conduct violating the TCPA in the future.

65. As a result of Defendant's negligent violations of 47 U.S.C. § 227, Plaintiff and all members of the Classes are also entitled to, and do seek, an award of $500.00 statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

**SECOND CAUSE OF ACTION**
**KNOWING AND/OR WILLFUL VIOLATIONS OF THE TCPA**
**47 U.S.C. § 227 *ET SEQ.***

66. Plaintiff repeats and incorporates by reference the allegations set forth above as though fully stated herein.

67. The foregoing acts and omissions of Defendant constitute numerous and

multiple knowing and/or willful violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. § 227, *et seq.*

68.  As a result of Defendant's knowing and/or willful violations of 47 U.S.C. § 227, *et seq.*, Plaintiff and all members of the Classes are entitled to, and do seek, injunctive relief prohibiting such conduct violating the TCPA in the future.

69.  As a result of Defendant's knowing and/or willful violations of 47 U.S.C. § 227, *et seq.*, Plaintiff and all members of the Classes are also entitled to, and do seek, an award of $1,500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and members of the Classes, prays for the following relief:

- That this action be certified as a Class Action, establishing the Classes and any appropriate sub-classes that the Court may deem appropriate;
- Appointing Plaintiff as the representative of the Classes;
- Appointing the law firms representing Plaintiff as Class Counsel;
- An award of $500.00 in statutory damages to Plaintiff and each member of the Classes for each and every negligent violation of 47 U.S.C. § 227(b)(1) by Defendant, pursuant to 47 U.S.C. § 227(b)(3)(B);
- An award of $1,500.00 in statutory damages to Plaintiff and each member of the Classes for each and every knowing and/or willful violation of 47 U.S.C. § 227(b)(1) by Defendant, pursuant to 47 U.S.C. § 227(b)(3)(B);
- Pre-judgment and post-judgment interest;
- An order providing injunctive relief prohibiting such conduct in the future, pursuant to 47 U.S.C. § 227(b)(3)(A);
- Costs of suit;

- An award of reasonable attorneys' fees and costs to Plaintiff and the Class, pursuant to the common fund doctrine and, *inter alia,* California Code of Civil Procedure § 1021.5;
- Any other further relief that the court may deem just and proper.

### JURY DEMAND

70. Pursuant to the Seventh Amendment to the Constitution of the United States of America, Plaintiff is entitled to, and demands, a trial by jury.

Dated: November 25, 2020                                     Respectfully submitted,

                                                            **KAZEROUNI LAW GROUP, APC**

                                                            By:   s/ ABBAS KAZEROUNIAN
                                                                   ABBAS KAZEROUNIAN, ESQ.
                                                                   ak@kazlg.com
                                                                   ATTORNEY FOR PLAINTIFF

**Additional Plaintiff's Counsel**
Jason A. Ibey, Esq. (SBN: 284607)
jason@kazlg.com
**KAZEROUNI LAW GROUP, APC**
321 N Mall Drive, Suite R108
St. George, Utah 84790
Telephone: (800) 400-6806
Facsimile: (800) 520-5523